# SHER TREMONTE LLP

February 27, 2026

**BY ECF**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

Re:     *United States of America v. Max McDermott*, No. 25-cr-427 (AS)

Dear Judge Subramanian,

We write on behalf of our client, Max McDermott, the defendant in the above captioned matter, to advise the Court of a privilege dispute between Mr. McDermott and the alleged victim companies in this case, non-parties Arena Special Opportunities Fund, LP and Arena Origination Co. LLC (together, "Arena") that is affecting Mr. McDermott's ability to defend himself in this case and in a parallel civil proceeding initiated by Arena in the New York Supreme Court, Commercial Division.  We respectfully seek an order (a) directing the government not to destroy or return certain documents subject to the privilege dispute until the Court's resolution of Arena's privilege claim, (b) establishing a deadline by which Arena shall move to intervene in this action and produce a detailed privilege log, and (c) setting a briefing schedule for the privilege dispute.

**Background Concerning the Connection Between the Indictment and the Parallel Civil Action Between the Parties**

The Indictment alleges that Mr. McDermott obtained a $10M loan from Arena (Lender-1) under false pretenses.  In particular, the Indictment claims that Mr. McDermott represented to Arena that he would use the loan proceeds to grow two companies (Escrow Company-1 and Real Estate Company-1) when he actually intended to use and did use the loan proceeds to repay investors in a different company he owned in connection with an SEC investigation of that company.  Indictment, ECF No. 1, ¶¶ 3–5.  Mr. McDermott is charged with one count of wire fraud and one count of money laundering.

In addition to its role as the alleged victim in the instant case, Arena is the plaintiff in a separate, parallel civil state court action against Mr. McDermott and others.  *See Arena Special Opportunities Fund, LLC et al. v. Arbor One Escrow, Inc. et al*, Index No. 650995/2023, New York Supreme Court, Commercial Division (the "Civil Action").  The Civil Action arises from the same loan Arena made to Mr. McDermott that is at issue in the Indictment. In late 2023, Mr. McDermott resolved Arena's claims against him and others with a settlement agreement that was negotiated extensively by the parties.  As part of the consideration for the settlement, Mr. McDermott agreed to (and did) (1) pay Arena $2,806,600.08 in cash in a series of payments over 24 months, and (2) transfer 100% ownership of five companies valued at between $30,000,000 and $40,000,000 between 2021 and 2022 (the "Companies"), to Arena.  Pursuant to the parties' settlement agreement, Arena then dismissed its claims against Mr. McDermott.  *See* Civil Action, Dkt. No. 256.  To "effectuate collection of the amounts due" under the settlement

Hon. Arun Subramanian
February 27, 2026
Page 2 of 5

agreement, including his obligations to make the cash payments and transfer ownership of the Companies, Mr. McDermott executed a stipulated judgment giving Arena the right to seek entry of judgment in the amount of $14,286,533, less settlement amounts actually paid, upon an uncured "Event of Default."  *See* Civil Action, Dkt. No. 274 (the "Settlement Agreement") at 8.  The settlement agreement provided that if all settlement amounts had been paid and all other settlement conditions were satisfied by December 1, 2025, Arena would fully release Mr. McDermott from all claims, including all claims against Mr. McDermott for fraud.  *Id* at 14.  As required by the Settlement Agreement, Mr. McDermott paid the entire $2,806,600.08 cash settlement amount and transferred the Companies.  On October 13, 2025, Arena sent Mr. McDermott a notice under the settlement agreement arguing that the issuance of the Indictment in this case constitutes an event of default in the Civil Action.  The settlement agreement provides that certain "settlement conditions" are "a condition to the agreements of the parties set forth in this Agreement."  One of the specified "settlement conditions" is that "No event or circumstance exists before or after the date of this Agreement that could *reasonably* be expected to have a Material Adverse Effect, including, but not limited to, an insolvency proceeding, another SEC action, or any other Governmental Authority or agency action by or against any of the McDermott Parties, in the sole and absolute discretion of the Arena Parties."  *Id*. at 6.

The Settlement Agreement defines "Material Adverse Effect" as "any event, occurrence, fact, circumstance, condition or change that is, or could reasonably be expected to become, individually or in the aggregate, materially adverse to the business, results of operations, condition (financial or otherwise), prospects, or assets of [two of the five companies Mr. McDermott transferred to Arena]."  Civil Action, Dkt. No. 317 at 6.  In correspondence with Mr. McDermott's counsel in the Civil Case, Arena argued that Mr. McDermott's indictment has had or will have a direct and negative impact on the Companies such that his indictment is a Material Adverse Effect and thus an event of default. Arena seeks to retain all of the consideration for which it bargained under the Settlement Agreement and an additional stipulated judgment against Mr. McDermott for more than $11 million.

On December 4, 2025, Arena filed a proposed $11,686,572 stipulated judgment in the Civil Action based primarily on its claim that the Indictment is an event of default under the settlement agreement in the Civil Case. In response, we filed an emergency motion by order to show cause for an order denying Arena's request to enter the stipulated judgment. The court overseeing the Civil Case declined to enter the proposed stipulated judgment.  *See* Civil Action, Dkt. No. 302. On February 3, 2026, Arena filed a motion seeking entry of the same stipulated judgment in the Civil Case.  *See* Civil Action, Dkt No. 304 (the "Motion").  In its Motion, Arena argues that the Indictment "has and can be reasonably expected to continue to negatively impact the companies' operations, marketability, and value, and materially diminished interest and value for purposes of financing, acquisitions, and sales" and that the Indictment "has had a direct effect on employee morale, retention, and hiring."  Civil Action, Dkt. No. 305 at 19.

**Background Concerning the Parties' Privilege Dispute**

In this criminal action (the "Action"), Mr. McDermott has received, by way of discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure (the "Rule 16 Discovery"), electronic versions of documents Arena voluntarily produced to the government (the "Voluntary

Hon. Arun Subramanian
February 27, 2026
Page 3 of 5

Production").  Based on undersigned counsel's review of the Voluntary Production, counsel concluded these documents are highly relevant to Mr. McDermott's anticipated defense in this case and in the Civil Action.[1]

The government designated the material from the Voluntary Production as "Disclosure Material" under the protective order in this action, ECF No. 27 (the "Protective Order").  Pursuant to the Protective Order, Mr. McDermott can only use "disclosure material" to defend himself in this action and not in any other proceeding, including the Civil Action.  After concluding that documents from the Voluntary Production are essential to Mr. McDermott's defense in the Civil Action, undersigned counsel sought the government's consent to modify the Protective Order to permit Mr. McDermott to use eleven documents from the Voluntary Production in the Civil Action.  The government contacted Arena concerning our request after which Arena issued a clawback request to the government, alleging that nine of the eleven documents we sought to use in the Civil Action are protected by privilege.  The government forwarded Arena's clawback request to undersigned counsel and connected undersigned counsel to the legal team at White & Case that represents Arena with respect to its privilege claim.  In its clawback request, Arena claimed that privileged documents had been inadvertently produced in the Voluntary Production and indicated that it would re-review the entire Voluntary Production for potential privilege issues.

It is our position that the inadvertent production doctrine does not apply here, and that Arena waived any privilege claim as to the documents it voluntarily produced to the government two years ago in its zest to see Mr. McDermott indicted.  *See United States v. Gangi*, 1 F.Supp.2d 256, 263 (S.D.N.Y. 1998) ("Even privileged documents, however, are not protected if a party voluntarily discloses them.  If a party voluntarily discloses a privileged document, it waives the privilege for that document and cannot later seek to keep the document confidential."); *Business Integration Services, Inc. v. AT&T Corp.*, 251 F.R.D. 121, 131 (S.D.N.Y. 2008) ("[E]ven if the disclosure were involuntary and inadvertent from AT&T's perspective, the circumstances of the case are such that disclosure has triggered a limited waiver of the attorney-client privilege."); *Atronic International, GMBH v. SAI Semispecialists of America, Inc.*, 232 F.R.D. 160, 164 (E.D.N.Y. 2005) ("Applying [the relevant factors] to the instant matter, the Court finds the inadvertent disclosure of the privileged two e-mails constitutes waiver of the attorney client privilege."); *see also Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd.*, 2013 WL 12503118, *9 (E.D.N.Y. 2013) ("[W]here, as here, the purportedly privileged document has already been disclosed to an adverse party (whether intentionally or not), the most sensible approach — and one reflected in the majority view — is to place the burden of proving non-waiver on the proponent of the privilege.").

We met and conferred with the government by exchanging emails and separately with Arena through emails and phone calls concerning Arena's privilege claim.  In exchanges with the government and Arena, we conveyed our position that, based on our review of the Voluntary

---

[1]    In light of the protective order in this case, ECF No. 27, and Arena's disputed privilege claim, we have refrained from describing the particular documents in the Voluntary Production that are relevant to Mr. McDermott's defenses in both actions.  Below, we request permission to include such information under seal in our response to Arena's anticipated motion to intervene (or in any motion we file concerning this dispute in the first instance).

Hon. Arun Subramanian
February 27, 2026
Page 4 of 5

Production and our understanding of the facts and circumstances in which the production was made, any applicable privilege had been waived. The government indicated it is honoring Arena's clawback request as to nine documents that Arena alleges are privileged and were inadvertently produced. The government agreed in principle to modify the Protective Order to permit Mr. McDermott to use two documents (of the eleven he had identified) that Arena does not claim are privileged, subject to conditions that would limit public disclosure of those documents (*i.e.*, a protective order and filing under seal in the Civil Action). In addition to disputing Arena's claim of privilege over the nine documents, we argued that even if the documents are protected by privilege (and they are not), the documents contain information subject to disclosure under *Brady* and *Giglio*, they are critical to Mr. McDermott's defense in this action, and they should not be returned or destroyed before Arena's privilege claim is litigated before this Court. *See United States v. Weisberg*, No. 08-CR-347 NGG RML, 2011 WL 1327689, at *4 (E.D.N.Y. Apr. 5, 2011) ("In certain cases, a criminal defendant's constitutional right to present a defense may outweigh a third party's right to assert privilege.").

As to Arena, we requested that Arena complete its privilege review swiftly because, in accordance with Arena's request, we have ceased reviewing all of the material in the Voluntary Production until Arena's privilege review is complete. We also requested that Arena issue a detailed privilege log. Counsel for Mr. McDermott and counsel for Arena met and conferred on this issue on both February 19, 2026 and February 20, 2026. Counsel exchanged emails prior to and between these conferences. While counsel for Arena has indicated they intend to file a motion to intervene in the instant case, they declined to provide a firm date by which they would do so. Arena has not contacted counsel for Mr. McDermott since February 20, 2026, has yet to move to intervene, and has not informed us of the status of its privilege re-review.

### Relief Sought

First, we seek the Court's assistance to ensure that that the government does not take any action now that undermines Mr. McDermott's ability to defend himself in this action. Like the government, we are honoring Arena's clawback request. We have stopped reviewing and segregated the Voluntary Production and all attorney work product based upon the Voluntary Production. Thus far, we have refrained from destroying or returning any documents from the Voluntary Production pending anticipated litigation in this Court. Insofar as the government intends to destroy or return to Arena any documents from the Voluntary Production, Mr. McDermott asks that the Court direct the government to refrain from taking those steps to avoid the destruction of exculpatory evidence until this Court has had the opportunity to adjudicate the merits of Arena's privilege claim.

Second, Mr. McDermott seeks intervention from the Court to safeguard his ability to promptly resume reviewing the Rule 16 Discovery. Arena produced approximately 20,000 documents to the government. We estimate that several thousand of those documents contain any communications with or references to counsel, which can be easily discerned by searching the Voluntary Production using attorney names and email addresses. Arena issued its clawback request to the government on February 10, 2026. Two and a half weeks have elapsed, and Arena has not provided a firm date by which it will complete its privilege review, produce a privilege log, or move to intervene in this Action. We appreciate that Arena is not yet a party in front of

Hon. Arun Subramanian
February 27, 2026
Page 5 of 5

this Court.    But subject to the Court's "inherent power to supervise and control its own proceedings," *Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013), we ask that the Court set a date by which Arena must move to intervene, if it wishes to continue to assert its privilege claim.  Given the size and sophistication of the legal team representing Arena at White & Case and the manageable size of the production under review, we request that the Court order Arena to file a motion to intervene, if it intends to do so, by March 6, 2026.  We further request that the Court direct Arena to produce to undersigned counsel, the government, and the Court a detailed privilege log for each document it seeks to clawback that identifies the date, type of document, sender, recipients (including copied recipients), the subject matter, and the basis for the privilege assertion by the deadline the Court sets for a motion to intervene.

Third, assuming the Court gives Arena a deadline by which it must intervene to preserve its privilege claim, in our opposition we will need to disclose the content of certain documents to support our position that Arena waived privilege and that the documents contain impeachment information subject to disclosure under *Brady* and *Giglio*.  Accordingly, we ask that the Court enter an order permitting us to file any documents (or descriptions of the content of documents) that Arena claims are privileged and/or that are protected from disclosure by the Protective Order under seal.

While we anticipate filing a motion to modify the Protective Order in this action to permit the use of certain documents from the Voluntary Production in the Civil Action, we intend to litigate Arena's privilege claim first because the Court's ruling on that issue will necessarily impact its ruling on a motion to modify the Protective Order.  If the Court prefers that we file a motion to modify the Protective Order before it receives or resolves a motion concerning the privilege dispute, then we will file such a motion promptly.

We appreciate the Court's consideration.

GRANTED. Until the Court adjudicates the merits of Arena's privilege claim, the government shall not destroy or return to Arena any documents from the Voluntary Production. Arena shall file any motion to intervene by **March 6, 2026**. Also by March 6, 2026, Arena shall provide both parties and the Court with a detailed privilege log for each document it seeks to claw back that identifies the date, type of document, sender, recipients (including copied recipients), the subject matter, and the basis for the privilege assertion. Defendant is permitted to file under seal any documents that Arena claims are privileged and/or that are protected from disclosure by the Protective Order.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 30.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: March 2, 2026

Respectfully submitted,

*/s/ Alexandra Conlon*
Alexandra Conlon
Michael Tremonte

*Attorneys for Max McDermott*

cc:    All Counsel of Record (by ECF)

Joel Coen (by email at joel.cohen@whitecase.com)
Laura Garr (by email at laura.garr@whitecase.com)

*Attorneys for non-parties Arena Special Opportunities Fund, LP and Arena Origination Co. LLC*