UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MAX MCDERMOTT,

Defendant.

25-cr-427 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Non-parties Arena Investors, LP; Arena Special Opportunities Fund, LP; and Arena Origination Co. LLC (collectively "Arena") intervened in this criminal case and now move for a protective order. On the basis of attorney-client privilege, Arena seeks to claw back documents relating to McDermott that it inadvertently disclosed to the government, and which the government later disclosed to McDermott. But Arena has failed to show that it took reasonable steps to prevent inadvertent disclosure, so its privilege is waived. The motion is therefore DENIED.

## BACKGROUND

In 2022, Arena lent McDermott $10 million to grow two of his real estate companies. Arena says that McDermott impermissibly transferred those funds to a family trust account and used a portion of those funds to pay investors and creditors of another one of his businesses, which was under SEC investigation. So Arena sued McDermott in state court and reported the issue to the United States Attorney's Office for the Southern District of New York (the "government").

In December 2024, after the government asked Arena to collect and produce responsive, non-privileged communications, Arena voluntarily handed over 22,279 documents (among other minor productions spanning 2023 to 2025). In advance of that production, Arena advised its outside counsel to withhold all privileged materials and gave it a comprehensive list of privilege search terms. Dkt. 37 at 17. Its counsel then worked with an e-discovery vendor to run privilege searches and filter out privileged communications to withhold from production. *Id.* at 17–18. Arena's counsel, however, introduced a categorization instruction that classified thousands of privileged documents as non-privileged, and it employed a cursory quality control review process, which failed to catch any of those thousands of documents before they were produced.

In September 2025, the government indicted McDermott and disclosed to him the documents Arena produced pursuant to Federal Rule of Criminal Procedure 16. McDermott then sought the government's position on a contemplated motion to modify a protective order in this case, so that he could use eleven of Arena's documents in parallel civil litigation. Dkt. 37 at 8–9. On February 9, 2026, the government notified Arena, which then, for the first time, asserted attorney-client privilege over nine of those documents, claiming that it had inadvertently disclosed them over a

year earlier. Arena sent a clawback letter to the government within 24 hours, and within three weeks it identified over 5,400 documents (the "Privileged Documents") it sought to claw back from the December 2024 production.

Arena intervened in this case and now seeks a protective order (1) requiring McDermott and the government to return or destroy the Privileged Documents and (2) prohibiting McDermott from using the Privileged Documents for any purpose.

## LEGAL STANDARDS

"At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). "Good cause justifying a protective order exists only when a party shows that disclosure will result in a clearly defined, specific, and serious injury. A finding of harm must be based on a particular factual demonstration of potential harm, not on conclusory statements." *See United States v. Milton*, 626 F. Supp. 3d 694, 700 (S.D.N.Y. 2022) (quoting *United States v. Hall*, 2021 WL 6122951, at *1 n.1 (S.D.N.Y. Dec. 14, 2021)).

The protection of documents covered by attorney-client privilege constitutes "'good cause' for the issuance of a protective order" in a criminal case. *See id.* at 702 (citing *Roseman v. Bloomberg L.P.*, 2016 WL 3866375, at *5 (S.D.N.Y. June 17, 2016)).

## DISCUSSION

No one disputes that the documents at issue would generally be covered by the attorney-client privilege or that a protective order would be warranted if the privilege applies here. This motion thus hinges on whether Arena has shown that it did not waive the privilege. Arena has failed to make that showing, so its motion is denied.

### I. Federal Rule of Evidence 502(b) governs, but the *Lois* factors remain instructive

"The party invoking the privilege . . . has the burden to show that the privilege has not been waived." *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019). "As a general rule, the voluntary production of a privileged document waives any claim of privilege with respect to that document." *United States v. Rigas*, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003).

But, as Arena contends, "disclosure [to a federal agency made in a federal proceeding] does not operate as a waiver" if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error . . . ." Fed. R. Evid. 502(b); *see United States v. Glob. Bus. Travel Grp., Inc.*, 2025 WL 1753214, at *2 (S.D.N.Y. June 18, 2025).

To determine whether an inadvertent disclosure waived the privilege, courts in this Circuit may apply a flexible four-factor test, considering "[1] the reasonableness of the precautions to prevent inadvertent disclosure, [2] the time taken to rectify the error, [3] the scope of the discovery and the extent of the disclosure," and "[4] the overreaching issue of fairness." *Lois Sportswear, U.S.A.,*

*Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985); *see Metro. Transportation Auth. v. Duffy*, 782 F. Supp. 3d 193, 201 (S.D.N.Y. 2025).

At this point, it bears mentioning that Arena faults McDermott for applying the wrong legal standard, i.e., Arena argues that "the *Lois* balancing test . . . was superseded in 2008 by [Rule] 502(b)." Dkt. 76 at 1. Arena is correct that Rule 502(b) governs here, but Arena is wrong that Rule 502(b) rendered the *Lois* factors irrelevant. Instead, the Advisory Committee's Explanatory Note to Rule 502(b) explains that while "[t]he rule does not explicitly codify [the *Lois*] test, because it is really a set of non-determinative guidelines that vary from case to case," the rule is, nevertheless, "flexible enough to accommodate any of those listed factors." As a result, courts understandably have continued to apply the *Lois* factors after the enactment of Rule 502(b). *See e.g.*, *Metro. Transportation Auth.*, 782 F. Supp. 3d at 201; *United States v. Schulte*, 2022 WL 1284549, at *2 (S.D.N.Y. Apr. 29, 2022); *United States v. Ray*, 2022 WL 842254, at *3 n.6 (S.D.N.Y. Mar. 20, 2022).

That said, one major difference between Rule 502(b) and the *Lois* factors is that the former is an *elements* test, while the latter is a *balancing* test. So if a party asserting privilege has failed to satisfy any one of Rule 502(b)'s elements, then the rest of the *Lois* factors can't preclude waiver. Here's an example to draw out the distinction: Before Rule 502(b) was enacted, a party who failed to take reasonable steps to rectify an inadvertent disclosure (to a federal agency in a federal proceeding) might still avoid waiver by showing that it took eminently reasonable precautions to prevent disclosure and that fairness considerations otherwise weighed in its favor. But under Rule 502(b), that would always be insufficient.

The upshot is that the inquiry under Rule 502(b) remains a fact-intensive, totality-of-the-circumstances analysis, but it is applied to each element independently. *Cf. Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *2 (N.D. Cal. Mar. 11, 2011) ("[Rule 502(b)'s] three requirements are separate and should not be conflated in the analysis."). It is proper for courts to consider the *Lois* factors, where appropriate, filtered through the lens of Rule 502(b), which controls.

## II. Arena failed to take reasonable steps to prevent inadvertent disclosure, so it waived attorney-client privilege

Two major pitfalls reflect that Arena failed to take reasonable steps to prevent inadvertent disclosure.

First, Arena used search and categorization instructions that were virtually certain to flag privileged documents as non-privileged. Arena's counsel instructed the e-discovery vendor to mark as non-privileged all documents that contain a privileged term *and* include one of seven designated opposing party/counsel terms, such as the name of an Arena lawyer, "McDermott," or the names of McDermott's lawyers. This, Arena apparently thought, would avoid mislabeling communications between Arena and McDermott (or their lawyers) as privileged. Dkt. 37 at 10–11. And it

worked. But it also captured privileged communications between Arena and its counsel that referenced McDermott or McDermott's counsel. That should have been obvious given that Arena had been litigating against McDermott for over two years and had thousands of such privileged emails. Indeed, Arena does not dispute that it produced roughly 1900 communications between it and the same outside counsel that it used to conduct its privilege review. Dkt. 71 at 11–12. So this issue was foreseeable. *See Rigas*, 281 F. Supp. 2d at 739 ("[T]he reasonableness of a party's actions to protect privileged information should be measured in light of the risks *foreseeable* to that party at the time the precautions were taken.").

What's more, as McDermott's expert explains, Arena's categorization instruction "invert[ed] th[e] standard approach" to keyword searches by identifying and segregating non-privileged documents. Expert Decl. of Dr. Maura R. Grossman, Dkt. 70 ¶ 21 (hereinafter "Grossman Decl."). An over-inclusive instruction that designates documents as privileged is unlikely to lead to inadvertent disclosure, but an over-inclusive instruction categorizing documents as non-privileged can be reckless where, as here, it foreseeably captures thousands of documents that should have been withheld. *See id.* Plus, Arena's counsel failed to use basic precautions to tailor its keyword search to its goal, such as instructing its vendor to search only for documents where the specified terms appeared in the email address fields rather than in the body of the documents. *See United States v. Brewington*, 2018 WL 1046804, at *3 (D. Colo. Feb. 26, 2018) (finding waiver where there was no evidence that a third party restricted search terms "to the emails' address fields" because, otherwise, his keyword search "would have located privileged emails referring to any of the searched names"). Zooming out, Arena decided to use a search methodology that necessarily and foreseeably introduced rather than avoided error. That's major pitfall number one.

Arena asserts that "the disclosure was caused by [this] single mistake." Dkt. 76 at 2. But that mistake slipped through only because of a second major pitfall: Arena's lack of reasonable quality control. With any reasonable quality control, Arena would have noticed the presence of at least one of the over 5,400 privileged documents in its 22,249-document production. *See* Grossman Decl. ¶ 32 (explaining that a "reasonable sample size for a production of this size and nature . . . would involve a sample of 2,400 randomly selected documents"; here, that would have captured nearly 600 Privileged Documents (i.e., 24%)). If, as Arena claims, the Privileged Documents "are, *on their face*," privileged, Dkt. 37 at 13 (emphasis added), the attorney reviewing the sample set "had experience . . . with the protocols for handling privilege review in connection with other matters involving large volumes of collected and produced documents," Dkt. 77 ¶ 13, and the attorney applied reasonable quality control methods here, then that attorney would have detected *at least one* privileged document. But they didn't.

In its defense, Arena has submitted contemporaneous emails showing that the attorney requested a "50-doc sample" of the non-privileged documents "so we can quickly [quality control]." Dkt. 77-7 at 3. But it submitted no declaration from the attorney stating that they in fact reviewed the sample set. And Arena's senior attorney who supervised the production, and who submitted a declaration in this case, has not claimed that he reviewed any of the over-22,000 documents after

the wrong instruction was introduced. So, even assuming that a 50-document sample was reasonable, either (1) the reviewing attorney wasn't properly trained or supervised, (2) that attorney didn't actually conduct any quality control, or (3) some combination of the above. Any of those would be unreasonable. *See* Grossman Decl. ¶ 37 ("Given the presence of 24 percent privileged documents in the putative production set, even a review of a mere [50] documents should have identified about [12] privileged documents—a bright red flag that there was a problem.").

The "quality control" employed was especially unreasonable because Arena was under no deadline from the government and was not required to produce any documents at all. *See* Fed. R. Evid. 502(b) advisory committee's explanatory note ("Other considerations bearing on the reasonableness of a producing party's efforts include . . . the time constraints for production.") Although Arena says it was under "time pressure to respond," Dkt. 77 ¶ 24, if it felt rushed, it could have asked for more time. It didn't. And the documents involved senior executives, which ordinarily would warrant heightened privilege review. *See* Grossman Decl. ¶ 39.

Next, Arena asserts that it is "virtually impossible to avoid any error" in dealing with large volumes of discovery material. Dkt. 76 at 8 (quoting *Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd.*, 2013 WL 12503118, at *12 (E.D.N.Y. July 18, 2013)). Fair enough. Here's where investigating the "scope of the discovery and the extent of the disclosure" is instructive. *Lois Sportswear*, 104 F.R.D. at 105. Arena produced around 22,000 documents in December 2024, which is "comparatively small in the context of modern eDiscovery." Grossman Decl. ¶ 33. And about 5,400 of those documents—24%—are privileged.[1] That differs wildly from the inadvertent disclosure percentage when "sampling and quality control techniques are properly employed," which is "typically[] well below one percent." *Id.* ¶ 36.

As McDermott points out, courts routinely treat disclosures with a significantly lower ratio as strongly supporting waiver. Dkt. 71 at 15–16; *see, e.g.*, *S.E.C. v. Badian*, 2009 WL 222783, at *4 (S.D.N.Y. Jan. 26, 2009) (finding waiver where "a bit more than 5%" of the disclosed documents were privileged and noting that even the reduced claim of 260 out of 67,000 documents was a "significant number"); *In re Washington Prime Grp. Inc.*, 2024 WL 4615552, at *11 (Bankr. S.D. Tex. Oct. 29, 2024) ("119 privileged pages out of 9,640 pages, or roughly 1.2% of the total production, exceeds the acceptable ratio for maintaining privilege."); *Kilopass Tech. Inc. v. Sidense Corp.*, 2012 WL 1534065, at *3 (N.D. Cal. May 1, 2012) (disclosure of "more than 1 in 50" privileged documents was a "high proportion" that "evidences a failure . . . to properly screen the

[1] Arena responds that the 24% figure is overblown because the privileged documents it produced accounted for only "2.42% of the total document set and [only] 14.35% of documents identified as responsive." Dkt. 76 at 8. But "the relevant number is of documents produced, not documents reviewed." *United States v. Lax*, 2022 WL 17987043, at *8 (E.D.N.Y. Dec. 29, 2022); *see Local 851 of Int'l Brotherhood of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F. Supp. 2d 127, 133 (E.D.N.Y. 1998) ("The analysis focuses on the number of privileged documents disclosed in relation to the overall size of the document production." (internal quotation marks omitted)). Here, that number is roughly 5,400, and the relevant ratio is 24%.

documents"); *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 2012 WL 3731483, at *4 (S.D. Ohio Aug. 28, 2012) (finding that 347 privileged pages in an approximately 7,500-page production, i.e., "4.6 percent," supported waiver); *Marrero Hernandez v. Esso Standard Oil Co.*, 2006 WL 1967364, at *1, *4 (D.P.R. July 11, 2006) (finding waiver where 2,000 of 400,000 pages were inadvertently disclosed); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 293 (D. Mass. 2000) (finding waiver where approximately 200 out of 70,000 documents were inadvertently disclosed). Here, as in those cases, the ratio itself is not dispositive but rather signals a deeper failure to take reasonable precautions. Assessing the scope of discovery and the extent of the disclosure allows the Court to put Arena's errors in context and understand their magnitude. In this case, that magnitude is substantial.

In sum, Arena failed to use reasonable categorization methods and criteria, and it failed to use reasonable quality control. The combination of those failures led it to inadvertently disclose thousands of documents in its December 2024 production, which was *especially* unreasonable given that the production was voluntary and had no mandatory deadline.

With that said, Arena urges the Court to focus on the handful of steps it took to prevent inadvertent disclosure. It highlights that (1) it retained and expressly instructed counsel to withhold all privileged materials from production, Dkt. 37 at 17, (2) it provided counsel with a comprehensive list of privilege search terms, *id.*, (3) its counsel, together with a third-party vendor, ran privilege searches and filtered out privileged communications to withhold from production, *id.* at 17–18, and (4) its counsel prepared a transmittal letter to the government confirming that "[a]ny inadvertent disclosure of information shall not constitute a waiver, in whole or in part, of any otherwise valid claim of privilege," *id.* at 18 (quoting Dkt. 40-1).

Each of those steps *is* reasonable.[2] But the Court does not read Rule 502(b)'s "reasonable steps" requirement to mean "some reasonable steps." The better reading is "steps that are reasonable in the aggregate." This makes sense, or else waiver would never apply, even in egregious circumstances, so long as the party asserting privilege took a couple of steps to prevent disclosure (e.g., merely hiring counsel and an e-discovery vendor).[3]

---

[2] It's not clear how the fourth step—a boilerplate statement about privilege—counts as a "reasonable step[] to prevent disclosure," Rule 502(b)(2), as opposed to, at most, some proof that any disclosure was in fact "inadvertent," *id*. 502(b)(1), or *maybe* as a preemptive step to "rectify" any error by flagging the holder's intent to preserve privilege, *id*. 502(b)(3), but the Court assumes that it relates to subsection (b)(2) for purposes of this analysis.

[3] To be clear, Arena cannot avoid waiver just because it outsourced privilege review to others who made the mistakes. *Local 851*, 36 F. Supp. 2d at 130 ("[I]n cases of inexcusable inadvertence, an attorney may waive the attorney-client privilege," even though the client is the formal privilege holder); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442–43 (S.D.N.Y. 1995) ("Though the attorney-client privilege indeed belongs to the client, there are many such rights that may be forfeited by the attorney's negligence," and considering the reasonableness of counsel's precautions "best reconciles the principles underlying the attorney-client privilege with the realities of document production").

An analogy bears this out: Let's say that the relevant inquiry was whether someone took "reasonable steps" to ensure safe skydiving. That person wore their parachute pack, helmet, and harness, made sure the plane had gas and the weather was appropriate, and completed all the prerequisite trainings and certifications. But they had asked someone to bring them a parachute pack from the corner of a room where expended packs were strewn about. And they never checked to ensure that their parachute pack actually had a parachute inside. In that situation, even if some of the steps they took to ensure that their skydiving experience was safe were reasonable, the steps in the aggregate were not.

The same is the case here. Even accepting Arena's four points above as true, the broader context belies Arena's argument that it took reasonable steps to prevent disclosure. In other words, the "other precautions that were taken, and there certainly were some, fade into insignificance in the face of [Arena's] carelessness." *S.E.C. v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999). And given that Arena has failed to satisfy one required element of Rule 502(b), the Court need not address the other elements, their related *Lois* factors, or McDermott's backup arguments.

## CONCLUSION

For the reasons discussed above, Arena's motion for a protective order is DENIED.

The Clerk of Court is respectfully directed to terminate Dkt. 36.

SO ORDERED.

Dated: August 10, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge